IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **KATRINA LONG JONES** | § | **Bankruptcy Case No. 14-30287** |
| | § | **Chapter 13** |
| Debtor | § | |
| | § | |
| **NATASHA HILL,** | § | **Adv. Proceeding No. 16-03235** |
| *on behalf of herself and all* | § | |
| *others similarly-situated*, | § | **District Court Case No. 18-01194** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **ATLAS ACQUISITIONS LLC and** | § | |
| **AVI SCHILD,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, NON-TAXABLE COSTS, AND
CLASS REPRESENTATIVE SERVICE AWARD**

# TABLE OF CONTENTS

I.  SUMMARY .................................................................................................................1

II.  NATURE OF THE ACTION ......................................................................................1

III.  COMPENSATION SOUGHT BY CLASS COUNSEL AND CLASS COUNSEL'S
LODESTAR CALCULATION..................................................................................3

    A.  Standard for award attorneys' fees in injunctive and fee-shifting class actions.................3
    B.  Class Counsel's lodestar calculation .........................................................................5
    C.  Description of work performed...................................................................................7
    D.  Class Counsel's hourly rates are reasonable................................................................9
    E.  The *Johnson* factors support Class Counsel's lodestar calculation..................................11
        i.  Relief for the Injunction Class...............................................................................14
        ii.  Relief for the FDCPA class ..................................................................................15
    F.  Proportionality is not a factor with respect to the injunctive relief and the FDCPA
statutory damages ..................................................................................................17

IV.  THE CLASS REPRESENTATIVE SERVICE AWARD.................................................. 20

V.  CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

Cases                                                                                            Page(s)

*Alexander v. City of Jackson,*
  456 F. App'x 397 (5th Cir. 2011) ....................................................................... 4
*Black v. SettlePou, P.C.,*
  732 F.3d 492 (5th Cir. 2013) .............................................................. 4, 5, 18
*Catala v. Resurgent Capital Services L.P.,*
  2010 WL 2524158 (S.D. Cal. Jun. 22, 2010) ....................................................... 19
*City of Burlington v. Dague,*
  505 U.S. 557 (1992) ............................................................................. 4, 5, 13
*City of Riverside v. Rivera,*
  477 U.S. 561 (1986) .......................................................................................... 4
*Cole v. Collier,*
  Civil Action No. 4:14-cv-1698, 2018 WL 2766028 (S.D. Tex. June 8, 2018).......... 3, 4, 19, 20
*Cope v. Duggins,*
  203 F. Supp. 2d 650 ............................................................... 10, 18, 19, 20
*DeHoyos v. Allstate Corp.,*
  240 F.R.D. 269 (W.D. Tex. 2007) .............................................................. passim
*Hamilton v. United Healthcare of Louisiana, Inc.,*
  310 F.3d 385 (5th Cir. 2002) .......................................................................... 18
*Heidtman v. County of El Paso,*
  171 F.3d 1038 (5th Cir. 1999) ........................................................................... 5
*Hensley v. Eckerhart,*
  461 U.S. 424 (1983) ........................................................................................... 3
*Infante v. Samara Portfolio Management, L.L.C.,*
  CA No. 1:14-CV-00324-MAC, 2018 WL 912891 (E.D. Tex. January 9, 2018) ..................... 18
*Jallo v. Resurgent Capital Services, L.P.,*
  Case No. 14-cv-00449, 2017 WL 914291 (E.D. Tex. 2017)................................... 20
*Jerman v. Carlisle,*
  271 F.R.D. 572 (N.D. Ohio 2010) ..................................................................... 19
*La. Power & Light Co. v. Kellstrom,*
  50 F.3d 319 (5th Cir. 1995) ............................................................................... 4
*Leroy v. City of Houston,*
  906 F.2d 1068 (5th Cir. 1990) ........................................................................... 9
*Loggins v. Delo,*
  999 F.2d 364 (8th Cir. 1993) .......................................................................... 18
*Lopez v. Portfolio Recovery Associates, LLC (In re Lopez),*
  576 B.R. 84 (Bankr. S.D. Tex. 2017) ......................................................... 10, 11
*McLain v. Lufkin Indus., Inc.,*
  649 F.3d 374 (5th Cir. 2011) ............................................................................. 9
*Memon,*
  2009 WL 6825243 ........................................................................................... 18
*Midland Funding, LLC v. Johnson,*
  137 S.Ct. 1407 (2017).................................................................................. 11, 12

*Newman v. Piggie Park Enterprises, Inc.*,
  390 U.S. 400 (1968)............................................................................................4
*Northwinds Abatement v. Employers Ins.*,
  258 F.3d 345 (5th Cir. 2001) ...........................................................................18
*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
  478 U.S. 546 (1986)............................................................................................5
*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010)....................................................................................4, 5, 9
*Phenow v. Johnson, Rodenberg & Lauinger, PLLP*,
  766 F.Supp. 2d 955 (D. Minn. 2011).................................................................18
*R.M. Perez & Assoc., Inc. v. Welch*,
  960 F.2d 534 (5th Cir. 1992)..............................................................................18
*Reade–Alvarez v. Eltman, Eltman & Cooper, P. C.*,
  2006 WL 3681138 (E.D.N.Y. Dec.11, 2006) ....................................................19
*Serna v. Law Office of Joseph Onwuteaka, PC*,
  CA No. 4:11–CV-3034, 2014 WL 3749652 (S.D. Tex. July 29, 2014) ..............18
*Shipes v. Trinity Industries*,
  987 F.2d 311 (5th Cir. 1993) ...............................................................................5
*Strong v. BellSouth Telecommunications, Inc.*,
  137 F.3d 844 (5th Cir. 1998) ...............................................................................3
*Walker v. U.S. Dep't of Housing & Urban Dev.*,
  99 F.3d 761 (5th Cir. 1996) ..................................................................................5
*Watkins v. Fordice*,
  7 F.3d 453 (5th Cir. 1993) ....................................................................................4

Statutes

11 U.S.C. § 502.............................................................................................................2
15 U.S.C. § 1692k(a)(2)(B) .....................................................................................3, 16
15 U.S.C. § 1692k(a)(3)................................................................................................4
§ 1692k(A)(2)(b)(ii) ....................................................................................................18

Rules

Fed. R. Bankr. P. 3001(c) ...................................................................................2, 3, 22
Fed. R. Bankr. P. 3001(c)(1) ...........................................................................2, 21, 22
Fed. R. Bankr. P. 3001(c)(3)..........................................................................................2
Fed. R. Bankr. P. 3001(f)................................................................................................2
Fed. R. Bankr. P. 7023 ...............................................................................................18
Fed. R. Civ. P. 23 .......................................................................................................18
Fed. R. Civ. P. 23(b)(2).................................................................................................20
Fed. R. Civ. P. 23(b)(3)...........................................................................................12, 20
Fed. R. Civ. P. 23(h) .....................................................................................................4

Plaintiff Natasha Hill ("Plaintiff"), individually and on behalf of all other similarly situated individuals, with the consent of Defendants Atlas Acquisitions LLC and Avi Schild ("Defendants"), moves for an order awarding attorneys' fees, non-taxable costs, and class representative service award.  For the reasons listed below, the Court should award the requested attorneys' fees, expenses, and class representative service award.

## I.  SUMMARY

1.      Plaintiff, as class representative, requests that Class Counsel be awarded compensation for fees and expenses in the amount of $240,000.00.  The compensation requested was negotiated at mediation only after the class settlement was reached, will be paid directly by Defendants after approval by this Court, and will not dilute or reduce any recovery to the named Plaintiff or class members.  The compensation requested constitutes a 57% reduction of Class Counsel's actual lodestar in this case, and the amount of the requested compensation is supported by case law.

2.      Similarly, the service award requested by Plaintiff and agreed to by the Defendants is in line with service awards granted in class actions within the Fifth Circuit, and the service award will not reduce any recovery to the other class members.

## II.  NATURE OF THE ACTION

3.      Plaintiff in this case is an individual consumer in whose Chapter 13 bankruptcy case Defendants filed proofs of claim that were executed by Defendant Avi Schild ("Schild") on behalf of Defendant Atlas Acquisitions LLC ("Atlas").  Defendants are debt buyers that purchase the debts of individuals who have filed for bankruptcy protection.  *See* AP Docket No. 228, p. 5-6. Plaintiff alleged, and Defendants ultimately admitted, that they filed proofs of claim in Chapter 13

bankruptcy cases across the country for debts that, in fact, did not exist (*i.e.,* fake debts). Plaintiff also alleged that Defendants filed proofs of claim in Chapter 13 bankruptcy cases that improperly characterized closed-end payday loans as open-ended debts in violation of Fed. R. Bankr. P. 3001(c). Plaintiff alleged Defendants engaged in this practice in order to avoid having to attach the "writing" on the underlying debt to the proof of claim as required by Fed. R. Bankr. P. 3001(c), the purpose of which is to establish ownership of the debt by the claimant through the original contract and a proper chain of title. Plaintiff claimed that Defendants did not have, and never had, possession of such documents.[1] Finally, Plaintiff alleged that Defendants violated other provisions of Fed. R. Bankr. P. 3001(c) and that their actions violated the FDCPA.

4.      Plaintiff alleged that Defendants' practice of filing deficient proofs of claim on a large-scale basis, and filing proofs of claim on *fake debts*, constituted a blatant and gross abuse of the bankruptcy process, the bankruptcy courts, and participants in consumer bankruptcies. This lawsuit was filed primarily to stop these practices.

5.      The class settlement negotiated by Class Counsel constitutes an excellent result in this case because the settlement will provide injunctive relief to over 22,000 debtors nationwide in the Injunction Class. Defendants have withdrawn the $390 claims and refunded any money received on them to the Chapter 13 Trustees. AP Docket No. 228, p. 24-27. Most importantly, pursuant to the settlement, Defendants have agreed to, and assert that they already have, put a

---

[1] A proof of claim that is filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes "prima facie evidence" of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). Moreover, proofs of claim filed in compliance with the Bankruptcy Rules are allowed unless a party in interest objects. 11 U.S.C. § 502. Fed. R. Bankr. P. 3001(c)(1) requires that a claim based on a writing attach a copy of the writing. Fed. R. Bankr. P. 3001(c)(1). The only exception to this requirement is for open-ended, revolving debts, where a creditor must attach a statement providing certain information about the debt. Fed. R. Bankr. P. 3001(c)(3). Plaintiff alleged that Defendants were purposefully mischaracterizing payday loans as open-ended debts in order to get around the requirement that Defendants attach writings to the proofs of claim, which Plaintiff claimed Defendants did not actually possess.

stop to the practices Plaintiff complains of in her complaint.  Docket No. 6-1, ¶ 2.3.C.  Stopping this practice has and will benefit thousands of debtors across the country going forward, prevent further abuse of the bankruptcy process by these Defendants, and serve as a warning to other debt buyers engaging in similar practices.  In addition, the settlement will provide $40,000, which is the statutory maximum in monetary relief (1% of Defendants' net worth) to the Fair Debt Collections Practice Act ("FDCPA") class members.  *See* 15 U.S.C. § 1692k(a)(2)(B).  *See* Kellett Declaration, ¶ 30.

### III.  COMPENSATION SOUGHT BY CLASS COUNSEL AND CLASS COUNSEL'S LODESTAR CALCULATION

**A.   Standard for awarding attorneys' fees in injunctive and fee-shifting class actions.**

6.     Courts may award attorneys' fees as part of a reasonable class action settlement. Fed. R. Civ. P. 23(h).  As part of its duty to review and approve a class settlement, the Court must determine whether the agreed-upon attorneys' fees are reasonable.   *Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 849 (5th Cir. 1998).  "Ideally, of course, litigants will settle the amount of a fee," *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), and the parties have done so here.  "When the amount of fees is agreed upon, is separate and apart from the class settlement, and has been negotiated after the other terms have been agreed, the attorneys' fee is presumed to be reasonable."  *Cole v. Collier*, Civil Action No. 4:14-cv-1698, 2018 WL 2766028 *13 (S.D. Tex. June 8, 2018)(slip copy)(citing *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322-323 (W.D. Tex. 2007).  In this case, the amount of attorneys' fees is agreed upon, is separate and apart from the class settlement, and was negotiated at mediation after the other terms of the settlement had been agreed.  *See* Kellett Declaration, ¶ 30.

7.     There is no common fund in this case.  There is an injunctive-relief class and a much

smaller FDCPA class.  Courts award fees on a lodestar basis as to both.  *DeHoyos*, 240 F.R.D. 336-37 (discussing injunctive and declaratory relief, the benefit to public at large in such cases, and that the lodestar is used to award fees in such cases).  For instance, the fee-shifting statutes applicable to civil rights actions play an important role in ensuring that attorneys will take on cases to protect individuals' rights, where the litigant lacks resources and seeks minimal monetary relief.  *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968); *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986)("If the citizen does not have the resources, his day in court is denied him; the congressional policy which he seeks to assert and vindicate goes unvindicated; and the entire Nation, not just the individual citizen, suffers.").  The FDCPA also contains a fee-shifting provision that allows prevailing plaintiffs to recover reasonable attorneys' fees.  15 U.S.C. § 1692k(a)(3).  Class Counsel took on this case despite its undesirability, helped the class members vindicate their rights, and assisted the bankruptcy system as a whole.  *See Cole*, 2018 WL 2766028 at *14.

8.     In determining the lodestar, courts are to "determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers.  Then, the court must multiply the reasonable hours by the reasonable hourly rates."  *Alexander v. City of Jackson,* 456 F. App'x 397, 399–400 (5th Cir. 2011)(quoting *La. Power & Light Co. v. Kellstrom,* 50 F.3d 319, 324 (5th Cir. 1995)).  "There is a strong presumption of the reasonableness of the lodestar amount."  *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013)(quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)).  Because the lodestar is presumptively reasonable, it should be modified only in exceptional cases.  *Perdue,* 559 U.S. 542 at 554; *Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir. 1993)(citing *City of Burlington v. Dague,* 505 U.S. 557, 562

(1992)).

9.      While the Court may enhance or decrease the fees based on the *Johnson* factors, "[t]he lodestar may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar." *Black,* 732 F.3d at 502.  And, as noted in *Perdue*, "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *See id.* at 553.[2]

10.      Class Counsel asserts that the hourly rates and time spent reflect the reasonable attorneys' fees for Class Counsel and the *Johnson* factors support Class Counsel's lodestar. However, Class Counsel made an agreement with Defendants to accept 43% of their actual lodestar.

**B.      Class Counsel's lodestar calculation.**

11.      Class Counsel performed a significant amount of work in this case.  As reflected in the fee invoices to be filed under seal and described in the declarations, Class Counsel participated extensively in the Show Cause Proceeding initiated by Judge Bohm and Judge Jones and presided over by Judge Isgur, Misc. Proceeding 16-00302, in the United States Bankruptcy Court for the Southern District of Texas (the "Show Cause Proceeding").  The hours Class Counsel spent on the Show Cause Proceeding are reflected in the table below:

---

[2] Three of the *Johnson* factors, 2 - complexity of the issues, 8 - results obtained, and 4 - preclusion of other employment, are presumably fully reflected and subsumed in the lodestar amount.  *Heidtman v. County of El Paso,* 171 F.3d 1038, 1043 (5th Cir. 1999)(quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986); *Shipes v. Trinity Industries,* 987 F.2d 311, 319–22 & n. 9 (5th Cir. 1993)).  Moreover, after *Johnson* was decided, the "Supreme Court has barred any use of the sixth factor," whether the fee is fixed or contingent.  *Walker v. U.S. Dep't of Housing & Urban Dev.,* 99 F.3d 761, 772 (5th Cir. 1996)(citing *City of Burlington,* 505 U.S. at 567; *Shipes,* 987 F.2d at 323). The Supreme Court has also noted that "the quality of an attorney's performance generally should not be used to adjust the lodestar because considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate."  *Perdue,* 559 U.S. at 553.  Thus, it would seem that the lodestar also subsumes factors 3 and 9.

| HOURS EXPENDED DURING APPLICATION PERIOD – SHOW CAUSE PROCEEDING | | | |
|---|---|---|---|
| **Timekeeper** | **Hours (in 1/10 Increments)** | **Rate** | **Total** |
| Theodore O. Bartholow | 60.9 | $400 | $24,360.00 |
| Karen L. Kellett | 115.6 | $500 | $57,800.00 |
| Karen L. Kellett (travel) | 15.5 | $250 | $3,875.00 |
| O. Max Gardner | 3.2 | $475 | $1,520.00 |
| Caitlyn N. Wells | 19.0 | $300 | $5,700.00 |
| Megan F. Clontz | 13.5 | $250 | $3,375.00 |
| Bakhtawar Khan | 19.3 | $100 | $1,930.00 |
| Myra Ali | 11.1 | $100 | $1,110.00 |
| | | Total Fees: | $91,920.00 |

12.    The time Class Counsel spent prosecuting this lawsuit are reflected in the table

below:

| HOURS EXPENDED DURING APPLICATION PERIOD – ADVERSARY | | | |
|---|---|---|---|
| **Timekeeper** | **Hours (in 1/10 Increments)** | **Rate** | **Total** |
| **Kellett & Bartholow PLLC** | | | |
| Theodore O. Bartholow (5/1/2017 – 1/31/2018) | 144.6 | $400 | $57,840.00 |
| Theodore O. Bartholow | 1.3 | $435 | $565.00 |
| Karen L. Kellett | 417.7 | $500 | $208,850.00 |
| Karen L. Kellett (travel) | 30.8 | $250 | $7,700.00 |
| O. Max Gardner | 0.4 | $475 | $190.00 |
| Caitlyn N. Wells | 200.2 | $300 | $60,060.00 |
| Megan F. Clontz | 19.6 | $250 | $4,900.00 |
| Bakhtawar Khan | 0.5 | $100 | $50.00 |
| Myra Ali | 34.5 | $100 | $3,450.00 |
| Randi Daun | 195.1 | $100 | $19,510.00 |
| Megan Parry | 57.4 | $100 | $5,740.00 |
| Kellett & Bartholow Total Fees: | | | $368,855.50[3] |
| **J. Thomas Black, P.C.** | | | |
| J. Thomas Black | 6.4 | $425.00 | $2,720.00 |
| Craig A. Higginbotham | 1.0 | $300.00 | $300.00 |
| Michael Hardwick | 12.1 | $300.00 | $3,630.00 |

---

[3] This amount does not include an additional $11,485.00 in fees that were "no charged" as administrative or duplicative.

| | | | |
|---|---|---|---|
| Robert Heinly | 0.3 | $150.00 | $45.00 |
| J. Thomas Black P.C. Total Fees: | | | $6,695.00 |
| **E. Orum Young Law, LLC** | | | |
| Joseph R. Moore | 33.5 | $300.00 | $10,050.00 |
| E. Orum Young Law, LLC Total Fees: | | | $10,050.00 |
| | | | |
| **Total from Adversary Proceeding:** | | | **$385,600.50** |
| **Total from Show Cause Proceeding:** | | | **$91,920.00** |
| **Total:** | | | **$477,520.50** |

13.     Class Counsel requests, and Defendants have agreed, to pay Class Counsel a total of $240,000.00 in attorneys' fees and costs.  Class Counsel incurred $32,741.22 in costs prosecuting this matter, which further reduces the attorneys' fee portion of the award to $207,258.78.  This amount is $270,261.72 less than Class Counsel's total lodestar and represents approximately 43% of Class Counsel's actual lodestar in this case.  Class Counsel is also entitled to reimbursement of their reasonable expenses in the amount of $32,741.22 and requests that the Court award those expenses as part of the $240,000.00 award for Class Counsel's fees and costs in this case.

## C.     Description of work performed.

14.     This case involved a significant investment of time and labor by Class Counsel.  In 2016, Class Counsel participated extensively in the related Show Cause Proceeding, during which it investigated potential class claims prior to filing suit with discovery, filings by Defendants, and court testimony.  Kellett Declaration, ¶¶ 4-7; Bartholow Declaration, ¶¶ 2-4.  Moreover, as summarized in the attached declarations, the litigation in the adversary proceeding was particularly hard fought for over a year.  Kellett Declaration, ¶¶ 8-27; Bartholow Declaration, ¶¶ 5-8. Defendants filed a motion to dismiss, arguing that this proceeding should be dismissed because the bankruptcy court did not have jurisdiction over class members outside this district, that the named

plaintiffs were not suitable class representatives, and that the requirements of Fed. R. Civ. P. 23(b)(3) could not be satisfied.  Kellett Declaration, ¶ 14.  Class Counsel prepared and filed an extensive response to Defendants' motion and appeared and argued at the hearing on Defendants' motion to dismiss.  *Id.*, ¶¶ 15-16.  After the hearing on the motion to dismiss, Class Counsel prepared and filed supplemental briefing regarding the hearing and, ultimately, the Court denied Defendants' motion to dismiss in its entirety.  *Id.*, ¶ 16-17.

15.     Discovery was also highly contested in this case.  Plaintiff served discovery requests on both Defendants, but Defendants were slow to produce responsive documents or would not produce certain responsive documents.  *Id.*, ¶¶ 18-19.  Plaintiff filed a motion to compel to obtain documents Class Counsel would need at a contested class certification hearing.  *Id.*, ¶ 20.  The Court granted the motion to compel and Defendants eventually produced over 41,000 pages of documents, which Class Counsel reviewed and analyzed in depth.  *Id.*, ¶ 19.  Class Counsel also prepared and served responses to Defendants' discovery requests to Plaintiff and prepared for and defended the depositions of Plaintiff and former class representative Katrina Long Jones.  *Id.*, ¶¶ 21, 27.

16.     Defendants also sought to defeat the above-captioned proceeding by repeatedly challenging the adequacy of the proposed class representatives, Natasha Hill and Katrina Jones, who ultimately withdrew as a class representative.  *Id.*, ¶¶ 14, 22, and 24.

17.     Only after the bankruptcy court issued its rulings regarding Plaintiff's motion to compel and motion to quash and Defendants' motion to strike Ms. Hill's class allegations, did the parties agree to mediate the case in November 2017, more than a year after the case was filed.  *Id.*, ¶ 28.  Class Counsel then worked with Defendants' counsel to prepare and file an emergency

motion to authorize mediation and select a mediator. *Id.* Class Counsel prepared for the mediation, including preparing a detailed mediation statement. *Id.*, ¶ 29. The parties then mediated the case beginning on November 14, 2017 in a mediation that lasted almost eighteen hours. *Id.*, ¶ 30; Bartholow Declaration, ¶ 9. Ultimately, the mediation was successful, and the parties reached an agreement to settle the case. Kellett Declaration, ¶¶ 30-31; Bartholow Declaration, ¶¶ 9-12. Since that time, Class Counsel spent a significant amount of time working with Defendants' counsel to draft the forms of the settlement agreement, the class notice, the motion for preliminary approval of the class action settlement and proposed order, and the final approval order. *See* Kellett Declaration, ¶31; Docket No. 6-1, Class Action Settlement Agreement.

**D.    Class Counsel's hourly rates are reasonable.**

18.    For purposes of calculating the lodestar, the reasonable hourly rate is determined with reference to the prevailing market rate in the relevant legal community for similar work. *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990).

19.    With respect to the rates charged by J. Thomas Black, P.C., such rates are reasonable for attorneys with similar skill and experience in the Houston area. *See* Black Declaration at ¶¶ 19-20. Mr. Moore of E. Orum Young Law, LLC has nearly seven years' experience with consumer bankruptcy law, including litigation experience related to various violations of bankruptcy law, as well as experience litigating consumer FDCPA claims. *See* Moore Declaration at ¶¶ 3-4, 19-20, and Exhibit A thereto.

20.    With respect to the rates charged by Kellett & Bartholow and E. Orum Young Law, LLC, the Fifth Circuit has held that out-of-town counsel may be entitled to the rates they charge in their home districts under certain circumstances. *McLain v. Lufkin Indus., Inc.*, 649 F.3d 374,

382 (5th Cir. 2011).

21.     In this instance, it was reasonable for Plaintiff to hire out-of-town counsel. However, in this case, the Court need not reach the reasonableness of hiring out-of-town counsel, as Class Counsel has agreed to accept only 43% of its lodestar, and the significant reduction in Class Counsel's lodestar has the effect of significantly reducing the hourly rates charged by Class Counsel to rates well-below the rates charged by similar Houston counsel. *See Cope v. Duggins*, 203 F. Supp. 2d 650, 656 and n. 4 (E.D. La. 2002).

22.     In any event, despite the fact that there are a number of attorneys with the necessary skill to take on this type of litigation, there are actually very few attorneys that are *willing* to handle this type of litigation because of the inherent risk of the litigation, the delay in compensation, and the substantial resources necessary to handle this type of unique bankruptcy class action litigation. *See also Lopez v. Portfolio Recovery Associates, LLC (In re Lopez)*, 576 B.R. 84, 97-100 (Bankr. S.D. Tex. 2017)(discussing and approving Kellett & Bartholow's hourly rates and plaintiff's decision to hire outside counsel).  Indeed, Kellett & Bartholow PLLC is one of only a few firms in the country to successfully prosecute class actions to vindicate abuses of consumer bankruptcy law. *See* Kellett Declaration, ¶¶ 49-50.

23.     Class actions involving alleged violations of consumer bankruptcy law are particularly risky and difficult to maintain. *Id.*, ¶ 50.  Generally, cases involving bankruptcy claims can take a long time to fully resolve, can be very expensive and time consuming, and without any guarantee of success or compensation for putative class counsel. *Id.*  It is also possible that class representatives will become non-responsive, die, decide they are unwilling to continue as class

representatives,[4] and/or that their Chapter 13 bankruptcy case will complete, convert to a Chapter 7, or be dismissed prior to final resolution of the case.  *Id.*  Further, given the amount of time that can pass while these cases move to resolution, regulatory action or changes in the law can moot claims.[5]  *Id.*  Similarly, it is difficult to maintain nationwide class claims on behalf of consumer bankruptcy debtors due to ambiguity in the law regarding bankruptcy court authority to determine claims of debtors outside of the district in which the bankruptcy court sits.  *Id.*

24.     Moreover, Kellett & Bartholow is particularly qualified to handle this type of litigation.  *Id.*, ¶¶ 54-71; Bartholow Declaration, ¶¶ 13-30.  Kellett & Bartholow has substantial experience handling consumer litigation, bankruptcy litigation, and class action litigation involving consumer and bankruptcy issues.  *Id.*

25.     Finally, several courts in various jurisdictions, including in the Southern District of Texas, have previously approved Kellett & Bartholow's rates hourly rates in cases involving consumer bankruptcy litigation.  Bartholow Declaration, ¶ 31; Kellett Declaration, ¶ 44.

**E.     The *Johnson* factors support Class Counsel's lodestar calculation.**

26.     As previously stated, Class Counsel's lodestar as calculated above represents a reasonable fee for the work performed in this case.  However, Class Counsel agreed to accept a 57% reduction of Class Counsel's actual lodestar in this case.  Application of the *Johnson* factors support Class Counsel's lodestar calculation and do not require any further reduction of Class Counsel's attorneys' fees in this case.

---

[4] As discussed above, former class representative Katrina Long Jones did, in fact, decide not to continue as a class representative in this litigation.

[5] For instance, Defendants argued that the Supreme Court's May 15, 2017 ruling in *Midland Funding, LLC v. Johnson*, 137 S.Ct. 1407 (2017) should be interpreted to mean that filing a proof of claim is not an appropriate basis for an FDCPA claim.  *See* AP Docket No. 59, p. 6-9.  While Class Counsel do not agree with this assertion, it was a new argument that Class Counsel would have to spend significant time and attention to litigating in this case.

27. **Time and Labor Required:** This factor is discussed at length above, in the attached declarations (Kellett Declaration, ¶¶ 4-33; Bartholow Declaration, ¶¶ 2-12) and are reflected in the billing records to be filed under seal. This case required a significant amount of time and labor from Class Counsel, which the parties vigorously litigated for over a year, before agreeing to a settlement.

28. **Novelty and Difficulty of Issues:** This factor is subsumed in the lodestar. The issues involved in this case, both factual and legal, are novel and unique. Kellett Declaration, ¶ 51. In the Show Cause Proceeding, it was discovered that Defendants routinely filed claims without possessing the underlying contract creating the debt, which ultimately resulted in Defendants filing proofs of claim on "debts" that did not exist and were not actually owed. Other novel and difficult issues included the defenses raised by Defendants, the jurisdiction of the bankruptcy court over nationwide class actions, Defendants' relentless berating of and attempts to exclude the class representatives, and the effect of the new *Johnson v. Midland* opinion by the Supreme Court, among others. *Id.*

29. **Skill Required:** This factor is subsumed in the lodestar. However, this case required that Class Counsel possess knowledge and experience with both the Bankruptcy Code and Rules, class action litigation and the requirements of Fed. R. Civ. P. 23 / Fed. R. Bankr. P. 7023. This blend of violations of the Bankruptcy Code and Rules with consumer class action litigation required special skill and experience in order to successfully prosecute this case. Kellett Declaration, ¶¶ 49-51, 54-71, and Exhibit A thereto.

30. **Preclusion of Other Employment:** This factor is subsumed in the lodestar, but Class Counsel's law firms are small and the investigation and prosecution of this case for two years

precluded other employment for Kellett & Bartholow.  *Id.*, ¶ 53.

31.     **Customary Fee:** As set out in the declarations, the rates charged by Class Counsel are the customary rates charged by counsel for this type of highly specialized work, and the amount of work that Class Counsel has put into this litigation is typical of matters that require comparable levels of legal research, briefing, motion practice, and argument.  *Id.*, ¶¶ 44, 46.  Bartholow Declaration, ¶ 31; Moore Declaration, ¶ 19; Black Declaration, ¶¶ 19-20.

32.     **Whether Fee is Fixed or Contingent:** Although this factor is generally no longer to be considered, courts since *City of Burlington v. Dague*[6] have noted the importance of considering the contingent nature of class litigation, counsel's risk in receiving little or no recovery, as well as the importance of socially beneficial class litigation, and have often increased the lodestar for fee awards to class counsel in such cases.  *DeHoyos*, 240 F.R.D. at 328-330.  Class Counsel took this case on a contingency basis.  Kellett Declaration, ¶ 47.

33.     **Time Limitations Imposed by Client or Circumstances:**  As discussed at length above, Class Counsel devoted a significant amount of time prosecuting this case and, at times, Class Counsel needed to file motions and responses on an expedited or emergency basis, which required Class Counsel to work longer than normal hours and devote additional resources to this case in order to meet some of the expedited deadlines imposed in this case.  Kellett Declaration, ¶¶ 4-33, 53.

34.     **Amount Involved and Results Obtained:** Class Counsel believes they obtained an excellent result for Plaintiff and the putative class members.  Bartholow Declaration, ¶¶ 10-12. This settlement creates two classes, an injunctive class, which seeks certification pursuant to Fed.

---

[6] 505 U.S. 557, 567 (1992).

R. Civ. P. 23(b)(2), and an FDCPA class, which seeks certification with respect to Fed. R. Civ. P. 23(b)(3).

      i.    *Relief for the Injunction Class*

35.    The Injunction Class is comprised of class members who are individuals in the United States in whose Chapter 13 bankruptcy cases Defendants filed a proof of claim on a closed-end debt during the period from December 3, 2011, through May 3, 2019, where the proof of claim was not evidenced by the debt.  Docket No. 6-1, ¶ 1.4.  The Injunction Class is estimated to be comprised of 22,444 class members involving 21,982 Chapter 13 bankruptcy estates.  *Id.*

36.    First, Defendants stated in the Show Cause Proceeding that they withdrew the $390 "fake debt" proofs of claim around the country and returned to the Chapter 13 Trustees any funds received on those claims.  Show Cause Proceeding Docket No. 228, p. 24-27.

37.    Second, Defendants are barred from raising waiver, estoppel or res judicata in response to any objection raised by class members with respect to the rest of Defendants' claims filed in their bankruptcy cases.  Docket No. 6-1, ¶ 2.3.C.  This is important, as one of Defendants' defenses to this class action lawsuit was that neither the class members nor their bankruptcy attorneys ever objected to the proofs of claim filed by Defendants.  AP Docket No. 57, p. 18-24. This allows anyone wanting to object to an Atlas claim after learning of the issues through the class notice to object and not have the fact that they did not earlier object be a defense to their objection.

38.    Defendants will also be enjoined by the Final Approval Order from filing proofs of claim that do not comply with Fed. R. Bankr. P. 3001(c)(1).  Docket No. 6-1, ¶ 2.3.C.

39.    Defendants will make a *cy pres* payment in the amount of $15,000 to the National Consumer Bankruptcy Rights Center, an entity proposed by Plaintiffs, for the benefit of consumer

debtors. *Id.*

40.     Defendants agree to use their best efforts to monitor government enforcement actions, including those brought by the Federal Trade Commission, the Consumer Financial Protection Bureau, the Office of the United States Trustee, and state attorneys' general, to determine whether such actions affect the validity of debts purchased by Atlas. *Id.* at ¶ 2.3.D.

41.     This settlement of the Injunction Class addresses the primary purpose of this lawsuit, which was to stop Defendants from filing proofs of claim for fake "debt" which class members never incurred, and to force Defendants to comply with Fed. R. Bankr. P. 3001(c)(1) by attaching the appropriate documents and providing the information required by federal bankruptcy law.

    *ii.*    *Relief for the FDCPA class*

42.     The FDCPA Class is comprised of class members in whose Chapter 13 cases Atlas filed a $390 "fake debt" claim, claims for which Atlas does not possess the writing on which such claim is based, claims which failed to otherwise comply with Bankruptcy Rule 3001(c) and claims where the underlying debt was invalidated or called into question by certain governmental lawsuits. *Id.* at ¶ 1.3.  The FDCPA has a one-year statute of limitations, so class members in the FDCPA class had claims filed by Defendants in their cases between December 30, 2015 and May 3, 2019.[7] *Id.*

43.     The FDCPA class is estimated at 2,717 class members involving 2,696 Chapter 13 estates. *Id.* at ¶ 1.4.  Defendants are paying $40,000, which was 1% of their net worth at the time of the settlement. *Id.* at ¶ 2.3.A.  The FDCPA caps statutory damages at the lesser of $500,000 or

---

[7] December 30, 2015 reflects the one-year statute of limitations set by the FDCPA, as that is the date that is one year prior to Plaintiffs' amended complaint, which added Ms. Hill to the lawsuit.

1% of the defendant's net worth.  15 U.S.C. § 1692k(a)(2)(B).  Thus, for members of the FDCPA class, the settlement provides the class members with all the relief they could receive had the case went to trial.

44.     In addition, and importantly, the class members do not need to file a claim form to receive payment; checks will be mailed to them directly.  Docket No. 6-1, ¶ 4.3.  Finally, any funds remaining after disbursement will be donated to Lone Star Legal Aid.  *Id.* at ¶ 4.3.C.  No funds will revert to Defendants.  *Id.*

45.     **Experience, Reputation, and Ability of the Attorneys:** This factor has been subsumed in the lodestar, but Class Counsel's experience, reputation, and ability are discussed at length in the attached declarations.  Kellett Declaration, ¶¶ 54-71; Bartholow Declaration, ¶¶ 13-31; Black Declaration, ¶¶ 3-6; Moore Declaration, ¶¶ 2-4.

46.     **Undesirability of the Case:** The risk of not being compensated for work performed and the inherent delay in receiving any compensation makes this case undesirable.  Attorneys (including Class Counsel) simply cannot afford to undertake this type of litigation absent some assurance that they will be able to recover their reasonable fees for their efforts, and there was certainly no such assurance here.

47.     **Nature and Length of the Professional Relationship with the Client:** This factor is not applicable in this case.

48.     **Fee Awards in Similar Cases:** The awards sought by Class Counsel herein are consistent with awards deemed reasonable in cases involving similar issues.  Courts have found Class Counsel's rates to be reasonable and have awarded fees based on the rates charged by Class Counsel in other cases.  Bartholow Declaration, ¶ 31; Black Declaration, ¶ 20; Moore Declaration,

¶ 19.

**F.     Proportionality is not a factor with respect to the injunctive relief and the FDCPA statutory damages.**

49.     With respect to the injunctive relief, it is difficult to assess monetary value.  In effect, Class Counsel served as a private attorney general to enforce the nation's bankruptcy laws. The settlement puts a stop to Defendants' unlawful practices and enjoins Defendants from engaging in wrongful conduct in filing proofs of claim in the nation's federal bankruptcy courts. With respect to the much smaller FDCPA class, the class is receiving the full amount of statutory damages it can receive under the law – *i.e.*, 1% of the net worth of the Defendants.  Thus, with respect to the FDCPA class, Class Counsel obtained through settlement the total amount of statutory damages that the class could have received at trial in a complete win (*i.e.*, despite the anticipated distribution to the FDCPA class being between $16 and $17 per class member, it is the same amount the class members would receive if Plaintiff were granted the maximum in statutory damages at trial).

50.     The Court expressed some skepticism at the preliminary approval hearing about the amount of attorneys' fees agreed to by the parties and being sought by Class Counsel, and the monetary portion of the settlement.  However, the FDCPA class members are receiving all they can under the statute, and, as noted at the preliminary approval hearing, attorneys' fees in FDCPA cases can dwarf the damages awarded because many debt collectors are small companies, like Defendant Atlas, and the statutory damages are capped at 1% of net worth.  Thus, the Fifth Circuit, the courts within it, and courts across the country have repeatedly rejected any proportionality argument concerning the amount of attorneys' fees compared to a low amount of FDCPA statutory damages.

51.     As noted by one Court in approving a $72,133.50 fee award where the statutory

damages granted by the Court were the $1,000 allowed by the FDCPA:

> Further, as the courts have long held, disproportion between the amount of
> attorney's fees sought and the damages recovered in the lawsuit alone does not
> render the award of attorney's fees excessive. *See Memon,* 2009 WL 6825243 (citing
> *Northwinds Abatement v. Employers Ins.,* 258 F.3d 345, 355 (5th Cir. 2001))(internal
> citations omitted) ... Further, consumer-protection statutes such as the FDCPA are
> "designed to make it possible for consumers to prosecute violations of the law and
> thus incentivize defendants to behave in a way that does not violate consumers'
> legitimate interests." *Phenow v. Johnson, Rodenberg & Lauinger, PLLP,* 766 F.Supp.
> 2d 955, 959 (D. Minn. 2011); *see also Loggins v. Delo,* 999 F.2d 364, 368 (8th Cir.
> 1993)(acknowledging that "proportionality between the amount of damages and fee
> awards was not required"); *see also Hamilton v. United Healthcare of Louisiana, Inc.,*
> 310 F.3d 385, 392 (5th Cir. 2002)("Congress, through the FDCPA, has legislatively
> expressed a strong public policy disfavoring dishonest, abusive, and unfair
> consumer debt collection practices, and clearly intended the FDCPA to have a
> broad remedial scope.").

*Serna v. Law Office of Joseph Onwuteaka, PC*, CA No. 4:11–CV-3034, 2014 WL 3749652 at * 11

(S.D. Tex. July 29, 2014).  *See also Infante v. Samara Portfolio Management, L.L.C.*, CA No. 1:14-

CV-00324-MAC, 2018 WL 912891 (E.D. Tex. January 9, 2018)(in FDCPA case, court awarded

$101,795.50 in fees and costs, even though the fees were "vastly disproportionate with the $1,000

recovery," because the Fifth Circuit "has expressly rejected a rule of proportionality between the

fee awarded and the damages recovered in determining the award of attorney fees.")(citing *R.M.*

*Perez & Assoc., Inc. v. Welch*, 960 F.2d 534, 542 (5th Cir. 1992)).  Indeed, "it would be an abuse of

discretion for the district court to reduce [an] attorney's fee award solely on the basis of the amount

of damages obtained." *Black,* 732 F.3d at 503.  Courts recognize that the reason counsel's fees are

often proportionately much greater than FDCPA class members' recovery is because of "the

design of the FDCPA damages provision, specifically § 1692k(A)(2)(b)(ii), which caps the amount

of damages at the lessor of $500,000 or one percent of the net worth of the debt collector."  *Cope,*

203 F. Supp. 2d at 656; *See, e.g., Catala v. Resurgent Capital Services L.P.,* 2010 WL 2524158 at *3 (S.D. Cal. Jun. 22, 2010) (approving FDCPA settlement of $35,000 distributed *cy pres,* with no payment to class members); *Cope,* 203 F.Supp.2d at 653 (approving FDCPA settlement where class members who returned claim forms would receive $11.90 each); *Reade–Alvarez v. Eltman, Eltman & Cooper, P. C.,* 2006 WL 3681138 at *7 (E.D.N.Y. Dec.11, 2006) (approving FDCPA settlement of $45,000 *cy pres,* with no payment to class members). *See also Jerman v. Carlisle,* 271 F.R.D. 572, 574, 576–77 (N.D. Ohio 2010) (certifying class even though FDCPA damages cap would limit relief to $3.10 per class member).  Further, the majority of relief in this case is injunctive, and courts have overruled objections to fees where a settlement includes injunctive relief and incidental monetary relief.  *See DeHoyos*, 240 F.R.D. at 336-37.

52.     The amount of attorneys' fees was negotiated after the terms of the settlement had been reached and with the help of the mediator, and in such situation is presumed reasonable. *Cole,* 2018 WL 2766028 at *13.  Further, Class Counsel agreed to cut its lodestar *and* to accept that amount over a potential *two-year period of time*,[8] and was thus taking the risk that Defendants, an individual and very small company, would not be able to pay the attorneys' fees agreed to in the settlement.  The Settlement requires Defendants to accrue $10,000 per month beginning on November 15, 2017 through the Final Approval Date, and then to pay the accrued funds upon the funding of the settlement.  Docket No. 6-1, ¶ 2.3.E.  After that, Defendants are to pay $15,000 per month, until the full $240,000 has been paid.  *Id.*  In November of 2017, the parties thought that final approval of the settlement agreement probably would occur in mid-to-late 2018, such that payment to Class Counsel at that time would most likely be less than $100,000.  Thus, at the time

---

[8] As described above, Class Counsel has invested a significant amount of time and resources in this case, incurring almost $500,000 in fees and costs, but have agreed to accept only $240,000 in fees and costs.

of the settlement, Class Counsel agreed to take a payout that it anticipated might not be paid for two years, and at substantial risk of non-payment.

## IV.  THE CLASS REPRESENTATIVE SERVICE AWARD

53.     The Class Representative requests – and Defendants do not oppose – a modest award of $5,000 for her participation in this case and her service to the class.  Ms. Hill actively participated in this case.  Moore Declaration, ¶¶ 13-14.  Ms. Hill provided information to Class Counsel to respond to discovery requests propounded by Defendants, and prepared for and attended her all-day deposition in Houston, during which she was berated the entire time by Defendants' counsel, and attended the mediation in Dallas.  *Id.*

54.     Awards to class representatives in the amount requested herein are reasonable and have been approved by other judges in this circuit.  *See Jallo v. Resurgent Capital Services, L.P.*, Case No. 14-cv-00449, 2017 WL 914291 at *3 (E.D. Tex. 2017)(approving $5,000 award to class representative); *Cope*, 203 F. Supp. 2d at 653 (approving $4,250 award to class representative).

55.     The purpose of incentive awards in class actions is to compensate named plaintiffs for the services they provide and burdens they shoulder during the litigation, and courts within the Fifth Circuit have regularly award incentive awards in amounts up to $10,000.  *DeHoyos,* 240 F.R.D. at 339-340 (collecting cases).

## V.  CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court award Class Counsel $240,000 for their fees and expenses, award Plaintiff a service award in the amount of $5,000, and grant Plaintiff all such other and further relief to which Plaintiff is entitled at law or in equity.

Respectfully submitted,

KELLETT & BARTHOLOW PLLC

*/s/ Karen L. Kellett*
Karen L. Kellett
Texas Bar No. 11199520
Southern District Bar No. 26490
Theodore O. Bartholow, III ("Thad")
Texas Bar No. 24062602
Southern District Bar No. 1571898
Caitlyn N. Wells
Texas Bar No. 24070635
Southern District Bar No. 2043070
11300 N. Central Expy., Ste. 301
Dallas, Texas 75243
Tel. (214) 696-9000
Fax (214) 696-9001
kkellett@kblawtx.com

LAW OFFICE OF J. THOMAS BLACK, PC
J. Thomas Black
Texas Bar No. 02373400
Alex Higginbotham
Texas Bar No. 24059946
2600 S. Gessner Rd., Ste 110
Houston, Texas 77063
Tel: (713) 772-8037
Fax: (713) 772-5058
tom@jthomasblack.com

E. ORUM YOUNG LAW OFFICES
E. Orum Young III
Louisiana Bar No. 36099
Joseph R. Moore
Louisiana Bar No. 33996
200 Washington Street
Monroe, LA  71201
Tel: (318) 322-6232
Fax: (318-3881294
law@eorumyoung.com

**CLASS COUNSEL**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served on the parties listed below via electronic mail on July 8, 2019.

*/s/ Caitlyn N. Wells*
Caitlyn N. Wells

Steven W. Sather
Manuel Newburger
Barbara M. Barron
BARRON & NEWBURGER, P.C.
7320 N. MoPac Expwy. Suite 400
Austin, Texas 78731
ssather@bn-lawyers.com
mnewburger@bn-lawyers.com
bbarron@bn-lawyers.com